The opinion of the Court was delivered by ■
Johnson, J.
The defendants severally appealed for a new trial on various grounds.'
One ground common to both has been taken, and upon which the opinion of the Court is founded, viz. : “ That the charge is not within the intent and meaning of the Act of 1769, under which the indictment is brought.”
The Attorney-General entertaining doubt as to the correctness of these convictions, if supported by the Act of 1769, alone, has, with a candor highly creditable to him as a public officer, signified the same to the Court, thereby strengthening the judicious arguments of the counsel for the defendants in support of this objection.
There can be no doubt, but that the design and object of the Act was to put down the crimes of burglary and breaking open houses in a felonious manner. The preamble recites, “that whereas the crimes of burglary and breaking open houses in a felonious manner are, of late years, more frequent than formerly, to the great *disquiet, terror, and impoverishing, of his Majesty’s subjects, within this province; which crimes might be, in a great measure, prevented, if due encouragement be given to such as shall vigorously endeavor the discovery and apprehending of such malefactors, and some severe punishment inflicted on such as shall receive or buy stolen goods, and harbor and protect the said offenders.” It then goes on to enact, that a reward shall be paid *310 out of the public treasury for the taking, prosecuting and convicting burglars. Next it makes provisions for persons disabled in this service, and for their families if they are killed. Lastly, it enacts as follows : “ And forasmuch as the said felons are much encouraged to commit such burglaries and felonies, because a great number of persons make it a trade to receive and buy of the said felons, the goods by them so feloniously taken; and also to make it their business to harbor and conceal the said offenders after the said facts, knowing the said felonies and burglaries to have been by them committed: Be it enacted, that if any person or persons shall receive or buy any goods or chattels that shall be feloniously taken or stolen from any other person, knowing the same to be stolen, or shall receive, harbor, or conceal, any burglars, felons, or thieves, knowing them to be so, shall be taken and received as accessary or accessaries to the said felony or felonies: and being of said offences legally convicted by the testimony of one or more credible witnesses, shall suffer and incur the pains of death as a felon convict: Provided, always, that if any such principal felon, who shall commit such burglary or felony aforesaid, cannot be taken so as to be prosecuted and convicted for any such offence, yet, nevertheless, it shall and may be lawful to prosecute and punish every such person and persons buying or receiving any goods stolen by any such principal felon, knowing the same to be stolen, as for a misdemeanor to be punished by fines, public whipping, and standing in the pillory, although the principal felon be not before convicted of the said felony, which shall exempt the offender from *being punished as accessary, if such principal felon shall be afterwards taken and convicted.”[1] P. L. 2T4, 2 Brev. Dig. 180.
The proviso in the Act is a key which lets us into the grand design and scope of the Legislature in the enactment of this law. It was to put down and do away the trade, as it is termed, of receiving and buying-goods taken with high-handed violence, and occasioning terror and dismay in the inhabitants. The practice of breaking open houses, both at night and in the day time, had become, as it is stated, frequent, and the perpetrators of the same, by the support which they received from others greedy of plunder, who, not only participated in the spoliations thus made, but were in the habit of screening the offenders from prosecutions. It being thought that this encouragement and support operated as the inducement to the perpetration of their offence, and that, the cause which operated as the incentive could be put down, the robberies of this description would cease therewith, this law is made, by which receivers of such goods, knowing them to be thus acquired, are rendered liable to the severe punishment before spoken of. But, in the wording of this part of the law, there is some doubt arising from its generality of expression, whether it may not embrace every case of goods received, knowing them to have been stolen, although the manner of taking them by the principal offenders was not by burglary or housebreaking. The proviso, however, which immediately succeeds, removes all doubt or uncertainty, as to the intendment of the preceding words, expressly confining the sense to receivers only, of such goods as had been taken by burglars or housebreakers; providing for the punishment of such receivers, although the principal *311 offenders might not have been taken. From whence it follows, that receivers of goods, otherwise taken than by burglary or housebreaking, are not embraced or punishable by the provisions of this Act of Assembly.
The rule in relation to the construction of penal laws is too well known to need comment. ^Construction cannot, consistently with the law, be made to extend so far, as, by forced intendment, to make that an offence which is not expressly created by the statute.
The Attorney-General, upon the supposition that the Act of 1169 might receive the construction thus given to it, has submitted another view of the case for the consideration of the Court, viz., “that the convictions of these defendants are maintainable under the provisions of the statute of 1st Ann, st. 2, c. 9, P. L.[1] 92, 2Brev. 119, and made of force by the Act of 1112.” To this it may be answered, that the essence of every prosecution consists in making known, with certainty and clearness to the party charged, the nature and grounds of the accusation against him. The humanity of the law presumes that the accused is innocent until his guilt is made openly to appear. It affords him an opportunity of being informed why he is called upon to answer to the offended majesty of the laws, declaring that he shall be furnished with a copy of the indictment, containing the accusations against him; and all this with the view that he may be afforded time to ascertain with precision the nature of the charge alleged against him, and prepare for his defence. In the cases before us, the defendants were charged with having committed an offence, to wit, the offence of receiving stolen goods, knowing them to have been stolen, contrary to the Act of Assembly in such case made and provided. The obvious inference was, that the Act of 1169 was the one on which the accusation was bottomed. That Act is specific in its nature, and confined to a particular species of offence. The trials progress, and, without evidence to prove the charges as laid, the defendants are found guilty. Now, what becomes of the required certainty of the law, or its justice, if the State could, on a motion for a new trial, arising from a total deficiency of proof, shift its ground, assume a different state of circumstances, in relation to which there had been no charge or trial, and wherein, if the parties accused are guilty, their guilt must be made to appear by a distinct law from that under which they *were indicted, and enacted with views entirely different? Were this allowed, a person might be convicted without the necessity of a charge previously exhibited, or the adductions of testimony. But the law-protects against surprise in every case, civil and criminal; a fortiori in the latter. The known certainty of the law is the security of all; and in criminal prosecutions it may be advanced as an undeniable axiom, that the offence charged must be distinctly and plainly made to appear, leaving no room for conjecture or doubt, as to the law under which the accusation is founded, or the material circumstances which make the accused liable to its sanction; this is but justice, and no more, both to the law and the accused. But £he conclusion to these indictments would, I conceive, have been irregular, provided it had been intended that the prosecution should have been under the statute of 1st Ann. The usual and correct conclusion in such *312 case would be “ contrary to the form of the statute in such case made and provided, and made of force in this State,” &C.[1] The Act of Assembly of 1769, and the statute of Ann, are essentially different. The former .is predicated on a particular state of things, and confined in its operation to one species of offence. The latter is not so, but relates to receivers of stolen goods generally.
White and Grafts, for the motion. Hayne, Attorney-General, contra.
To support the convictions under the statute of Ann, would be, in effect, to convict first, and then develope, to the accused, the grounds on which the conviction took place. This, the. humanity and justice of the law forbids. It chooses rather that ninety and nine guilty persons should go unpunished, than one innocent man suffer.
The indictments before us, can receive no support by the statute of Ann. New trials are, therefore, ordered in both cases.

 4 Stat. 306.

 2 Stat. 643.

 1 Brev. 41; 2 Bay, 266 ; see 10 Rick. 104.